# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| JOSEPH OZMUN,<br>    Plaintiff<br><br>V.<br><br>PORTFOLIO RECOVERY ASSOCIATES,<br>LLC; RAUSCH, STURM, ISRAEL,<br>ENERSON & HORNIK, LLC; WESTERN<br>SURETY COMPANY AND TRAVELERS<br>CASUALTY AND SURETY COMPANY<br>OF AMERICA<br>    Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 1:16-cv-00940-SS |

## **DECLARATION OF MANUEL H. NEWBURGER**

I, the undersigned Manuel H. Newburger, make this declaration under penalty of perjury and state the following:

My name is Manuel H. Newburger. I am over eighteen years of age, of sound mind, and fully competent to make this affidavit. I am the lead defense counsel for Defendant Rausch, Sturm, Israel, Enerson & Hornik, LLC ("RSIEH") and Vice President of Barron & Newburger, P.C., and in those capacities I have personal knowledge of the matters set forth in this declaration. This declaration is offered in opposition to Plaintiff's Motion for Attorney's Fees and Costs.

### **Qualifications to Provide this Affidavit**

My qualifications are set forth in my prior declaration that was filed as ECF Doc. 151-1. That declaration is incorporated herein by reference. Based upon my experience and qualifications I express the following opinions.

### **Opinions Regarding the Fees of Plaintiff's Counsel**

It is my opinion that Plaintiff's counsel should be awarded zero fees and costs in this case. The basis for that opinion is set forth below, organized in a manner that addresses the factors specified in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) and *Hensley v. Eckerhart*, 461 U.S. 424 (1983).

### A. The Time and Labor Required

Defendant RSIEH retained me as its attorney in this matter prior to the date of its answer. When PRA's corporate counsel reached a tentative agreement to settle with Celetha Chatman, I drafted the settlement documents. At the time, I thought that $6,500 was an outrageously large amount to settle this case, but it was not my job to hinder resolution.

I prepared the settlement documents using the standard settlement template that I use in almost every non-class case. It is the same basic template that I used when I was a plaintiffs' lawyer. As is evident from ECF Documents 13, 21, 22, and 25, all of which are incorporated herein by reference, the settlement failed because, according to Ms. Chatman's email of August 31, 2016 (ECF Doc. 22-2, p. 2), Plaintiff Ozmun would not sign a global release. Defendants were unwilling to settle unless they were fully released.

At no time in the course of Defendants' efforts to bring that settlement to fruition did Ms. Chatman ever state to me that Mr. Ozmun had other claims that he wished to pursue against either of the Defendants. Plaintiff's full deposition in this case has been filed as ECF Doc. 101-2, and it is incorporated herein by reference. In that deposition, almost three months after the August 31, 2016 email from Ms. Chatman, Mr. Ozmun testified that he did not know about the failed the settlement until just days before his deposition and that he was not even aware that it was being negotiated. See Ozmun Dep. at 150:11 - 153:4 (ECF Doc. 101-2). At no time in the course of this case has Plaintiff withdrawn or amended this deposition testimony.

During the Ozmun deposition I attempted to understand why Ozmun and Chatman might have refused a global release:

```
                            142
15   Q.   But you don't have any other claims
16   against Rausch, Sturm, right?
17       A.   Outside of this suit, no, sir.
18       Q.   All right.  Have you told me about every
19   claim you have against PRA?
20       A.   Yes, sir.  It's all here in the suit.
21       Q.   You don't have any claims against PRA
22   except what's in this suit?
23       A.   No, sir.
24       Q.   No, you do not?
25       A.   I do not.
                            143
 1       Q.   All right.  Are there any other suits
 2   you're planning to file against Rausch, Sturm or
 3   PRA?
```

```
 4    A.   I don't know that. I'd have to check
 5   with my attorney.
 6    Q.   This is everything you know of, right?
 7    A.   In the suit, yes, sir.
 8    Q.   And you don't have any other complaints
 9   about anything either of them has ever done to you
10   except what we've been talking about thus far today
11   in this deposition, right?
12    A.   I think this is most of it, yes, sir.
13    Q.   Was it all of it?
14    A.   At this time, yes, sir. There could be
15   more later.
16    Q.   Well, this is my chance to depose you.
17   Do you mean if they do something in the future,
18   there could be more --
19    A.   Right.
20    Q.   -- or do you mean there could be other
21   things you haven't bothered saying yet?
22    A.   There's nothing I'm thinking of now that
23   may be actionable later.
```

Ozmun Dep. at 142:15 - 143:23 (ECF Doc. 101-2).

At no time in the course of this case has Plaintiff withdrawn or amended this deposition testimony. Nevertheless, Plaintiff later amended his Complaint in this case to assert claims against RSIEH and Travelers under the Texas Debt Collection Act, and in 2017 he filed Cases 17-665 and 17-665, both of which pertained to causes of action that allegedly existed at the time of Ozmun's deposition.

It is my opinion that the failure to convey the settlement offers or involve Ozmun in the settlement discussions in August, 2016, was a serious ethical lapse by attorneys Chatman and Wood that led to all of the fees incurred by all of the parties in this case. It is further my opinion that Plaintiff and his counsel should recover zero fees in this case, as it is the unethical conduct of Ms. Chatman and Mr. Wood that is the cause of all of those fees.

Moreover, it is my opinion that at the time this suit was filed the case law was well-established that a plaintiff is limited to a maximum recovery of $1,000 in statutory damages in an FDCPA case, no matter how many violations are alleged. *See, e.g., Harper v. Better Bus. Servs., Inc.*, 961 F.2d 1561 (11th Cir. 1992); *Wright v. Finance Serv.*, 22 F.3d 647 (6th Cir. 1994); *Picht v. Hawks*, 77 F. Supp. 2d 1041, 1045 (D. Minn. 1999), *aff'd*, 236 F.3d 446 (8th Cir. 2001); *Martinez v. Scott*, No. H-10-1619, 2011 U.S. Dist. LEXIS 90630, at *11 (S.D. Tex. Aug. 12, 2011). The presence of multiple defendants does not expand the cap, as the

statutory limit is tied to the "action," not the number of alleged violators. *See Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365 (4th Cir. 2012); *Goodmann v. People's Bank*, 209 Fed. Appx. 111, 114, 2006 U.S. App. LEXIS 31555 (3d Cir. 2006). *See, also, Weiss v. Fein, Such, Kahn & Shepard, P.C.*, 2002 WL 449653, 2002 U.S. Dist. LEXIS 4783, (SDNY Mar. 22, 2002); *Dowling v. Kucker Kraus & Bruh, LLP*, 2005 U.S. Dist. LEXIS 11000 (SDNY June 6, 2005); *Evanauskas v. Strumpf*, 2001 U.S. Dist. LEXIS 14326, No. 00 Civ. 1106 (JCH), 2001 WL 777477, at *6 n.6 (D. Conn. June 27, 2001).

Similarly, at the time this action was filed the case law was well-established that a plaintiff under the Texas Debt Collection Act can recover no statutory damages in the absence of actual damages. *See Elston v. Resolution Servs.*, 950 S.W.2d 180 (Tex. App.--Austin 1997, no writ); *Marauder Corp. v. Beall*, 301 S.W.3d 817, 822-23 (Tex. App.—Dallas 2009, no pet.); *King v. Deutsche Bank Nat'l Tr. Co.*, No. A-14-CV-740-LY-ML, 2016 U.S. Dist. LEXIS 79971, at *42 (W.D. Tex. Feb. 23, 2016); *Allen v. Dovenmuehle Mortg., Inc.*, No. 3:13-CV-4710-L, 2015 U.S. Dist. LEXIS 83795 (N.D. Tex. June 29, 2015).

In the present case, Plaintiff asserted claims for statutory damages, but not actual damages. It is my opinion, based upon my experience and qualifications, that any reasonably competent attorney should have known that the maximum value of this case at the time of the failed settlement was $1,000 plus reasonable fees and costs. Nevertheless, Ms. Chatman insisted on a settlement of $6,500 (plus forgiveness of Ozmun's debt) at a time when the total of their alleged fees and costs was less than $2,000. I

I have addressed below the excessive hourly rate claims of attorneys Wood and Chatman. However, even if the Court were to accept those rates at face value, as of the date that Chatman caused the settlement to fail the total combined fees of Plaintiff's lawyers would have been only $1,309.60. *See* ECF Doc. 152-1, p. 2. Even after the costs claimed by Plaintiff for this case Ozmun would have netted over $4,500 in a case in which his recovery was limited to $1,000. It is my opinion, based upon my experience and qualifications, that no competent attorney would have rejected the $6,500 as a global settlement, and no fees incurred after Chatman's rejection of a global release were reasonable or necessary in this case for Plaintiff or his attorneys.

The conduct of Chatman and Wood in rejecting the settlement is even more egregious in light of two additional factors. First, setting aside Plaintiff's deposition testimony that he had no other claims, the "dispute" letters at issue in all three of the claims against PRA were all dated May 31, 2016. Plaintiff attempted to split his claims against PRA into three separate suits, ignoring both the case law prohibiting claim-splitting and well-established notions of res judicata. My opinion that such conduct was improper and reflected unreasonable and unnecessary time and expenses is supported by the recent

4

decision in *Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, No. 17 CV 773, 2018 U.S. Dist. LEXIS 136910 (N.D. Ill. Aug. 14, 2018), in which Wood, Chatman, and Community Lawyers Group, Ltd. were sanctioned in the amount of $7,888.13 for improperly splitting the claims of a plaintiff, just as they did in this case.

It is my opinion that the splitting of Ozmun's claims against PRA was improper and that it was done, at least in part, to evade the FDCPA's $1,000 cap. However, even if one assumed solely for the sake of argument that Ozmun was entitled to $1,000 for each PRA account at issue, and $1,000 from RSIEH (a damage claim never stated in his Rule 26(a)(1) disclosures), that would total $4,000. The settlement that Chatman rejected, based upon the time records that she and Wood have submitted, should have netted Ozmun $500 more than that. It is my opinion that the rejection of a global release and of the settlement originally negotiated in this case was conduct by Chatman (and Wood, as her supervisor) in which no reasonable attorney would have engaged. It is further my opinion that such conduct is so far below the standard of conduct for attorneys in cases of this type that it demonstrates conscious indifference and reckless disregard for the law and for the rights and protection of Wood and Chatman's client. In light of both the state of the law and the time records submitted by Plaintiff's counsel, it is my opinion that there was no basis in fact or law for the rejection of the global release and that the rejection of the release was vexatious conduct by Chatman (and Wood, as her supervisor) that multiplied this litigation and caused all of the fees that followed.

Second, there is the false basis upon which the settlement was rejected. Chatman's email of August 31, 2016, states: "Plaintiff will not be signing a global release." *See* ECF Doc. 22-2, p. 2. Such a statement at least implies that Plaintiff was involved in the settlement process. However, as noted above, Plaintiff testified without contradiction that he did not know of the settlement or its failure until months later. *See* Ozmun Dep. at 150:11 - 153:4 (ECF Doc. 101-2). The exclusion of Ozmun from the settlement process is also conduct that rendered all of the fees and expenses that followed unnecessary.

Based upon my experience and qualifications set forth above, it is my opinion that an attorney's failure to convey offers and to involve her client in settlement discussions is a serious ethical lapse that harms the client, the opposing party, and the Court. Here, Ms. Chatman refused to agree to a general release, yet she also failed to disclose the existence of any other claims that might have enabled the settlement to be salvaged. When, almost three months later, Ozmun testified that he had no other claims, the refusal to consummate the settlement became even more inexplicable.

Although it is my opinion (as addressed below) that Plaintiff should recover no fees at all due to the poor degree of success of his counsel, it is also my opinion that if he is permitted to recover fees, no time incurred in this case by Plaintiff's

counsel subsequent to August 31, 2016, was reasonable or necessary. It is my opinion that the unethical and unreasonable conduct of Chatman and Wood in causing the initial settlement to fail renders all of the time incurred subsequent to that date unreasonable and unnecessary fees, the cause of which was Wood's and Chatman's conduct.

Apart from the matters addressed above, other work by Plaintiff's attorneys was unreasonable and unnecessary. The original Complaint in this case named Travelers Casualty and Surety Company of America as a defendant, based upon its Texas third-party debt collector bond for RSIEH. However, no TDCA claim was stated against RSIEH in that Complaint. It is my opinion, based upon my experience and qualifications, that there was no basis in fact or law for the joinder of the issuer of a Texas third-party debt collector bond in a suit that asserts no actual damages and no relief under the TDCA against the bond principal.  Any time incurred in asserting such groundless claims was unreasonable and unnecessary.

It is also my opinion, based upon my experience and qualifications, that there was no basis in fact or law for the assertion of TDCA claims against PRA and Western Surety in the absence of a claim for actual damages or injunctive relief under the TDCA. Any time incurred in asserting such groundless claims was unreasonable and unnecessary.

Notwithstanding Ozmun's deposition testimony that he had no other claims, and despite my clients' opposition, Plaintiff filed an Amended Complaint (ECF Doc. 53) in which he added a claim against RSIEH and Travelers under the TDCA. The Amended Complaint also failed to seek actual damages or injunctive relief. It is my opinion, based upon my experience and qualifications, that there was no basis in fact or law for the assertion of claims under the TDCA and on a third-party debt collector bond in a case in which neither actual damages nor injunctive relief were requested.

The Amended Complaint requested "Statutory damages from each Defendant of not less than $100 for each violation pursuant to TDCA § 392.403(e)". However. Tex. Fin. Code § 392.403(e) provides:

> (e) A person who successfully maintains an action under this section for violation of Section 392.101, 392.202, or 392.301(a)(3) is entitled to not less than $100 for each violation of this chapter.

The Amended Complaint asserted no claim against RSIEH under Section 392.101, 392.202, or 392.301(a)(3), and there was no basis in fact or law for the assertion of a claim against RSIEH for YDCA statutory damages. It is my opinion that all of the time incurred in connection with Plaintiff's First Amended Complaint was unreasonable and unnecessary, even if the Court were to find that Plaintiff is entitled to any fees at all in this case.

**6**

Astoundingly, Plaintiff seeks fees for having to defend ECF Doc. 81, Defendants' Motion to Dismiss with Prejudice, or in The Alternative, for an Order in Limine, and to Hold Plaintiff and His Lead Attorneys in Contempt. That motion was filed as a result of violations of court orders by Plaintiff and his attorneys, as found in the Court's order on that motion. The motion should never have been necessary and was made necessary only as a result of the conduct of Ozmun and his counsel in ignoring the Court's orders. Should the Court find that Plaintiff is entitled to any fees at all, it is my opinion, based upon my experience and qualifications, that none of the time incurred in connection with that motion by Plaintiff's counsel was reasonable or necessary, as it should never have been necessary to file that motion.

It is further my opinion, based upon my experience and qualifications, that all of the time spent in connection with Plaintiff's motion to recuse, the motion to stay, and consulting with Ruth Kollman (whom I presume to be the "RK" referenced in the time records) was unreasonable and unnecessary. The motion to recuse was, in my opinion (and that of Judge Ezra) meritless. The same is true of the motion to stay. Even if the Court allows Plaintiff any fee recovery at all it is my opinion that all of such time should be denied because it was unreasonable and unnecessary.

### B. The Novelty and Difficulty of the Questions

It is my opinion that the questions presented in this case should have been neither novel nor difficult. Plaintiff's counsel insisted on filing pleadings, taking positions, and making demands that were not supported by the law or the facts. That, however, did not require above-average ability or skill, and it demonstrated below-average legal abilities. What was required (and lacking) from Plaintiff's counsel was the ability to deal honestly and ethically and to do simple research and read the case law. On all of these points Wood and Chatman failed.

### C. The Skill Required to Perform the Legal Services Properly

Based upon my experience and qualifications it is my opinion that this case did not require above-average legal skill to handle or settle promptly Plaintiff's claim. I worked on my first "fair debt" case in 1982 as a law clerk for my mentor Joe Longley, and I handled many FDCPA and TDCA cases while still a relatively new attorney. What was required in this case on the part of Plaintiff's attorneys were honesty, integrity, and diligence. In my opinion all three were lacking in the conduct of Wood and Chatman, leading to all of the fees incurred after August 31, 2016. All of such fees were unreasonable and unnecessary, as they would have been avoided had Chatman not refused to agree to a global release.

### D. The Preclusion of Other Employment Due to Acceptance of this Case

The PACER docket for this district and the Northern District of Illinois reveals that Chatman has filed over 600 cases in the less than three years that she has been licensed. I see no evidence that Plaintiff's lawyers have the slightest concern about the size of their case load, and in my opinion this is not a significant factor.

### E. The Customary Fee

I have reviewed the time records submitted by Plaintiff. Those records claim an hourly rate for Celetha Chatman of $335 per hour in 2016, at a time when she was licensed for less than one year. Such an hourly rate is, in my opinion, grossly excessive.

I am familiar with rates charged in the Northern District of Illinois (where Ms. Chatman has filed the majority of her cases), as I regularly practice in that district. $335 per hour is more than the rate that I have seen charged by lawyers with over a decade of experience, in cases similar to this one (*i.e.*, suits under the FDCPA).

I am also familiar with the rates charged by attorneys in Austin, Travis County, Texas, and with the Hourly Fact Sheet published by the State Bar of Texas, a true copy of which is <u>Exhibit A</u> to this declaration. It is my opinion that for an attorney of average to above-average skill an hourly rate of $150 to $250 per hour would be a reasonable, necessary, usual, and customary rate for an attorney of one to three years. However, for the reasons set forth below it is my opinion that Ms. Chatman merits a lower hourly rate due to her poor performance and poor legal skills.

For similar reasons it is my opinion that the hourly rates claimed by Michael J. Wood are excessive and unreasonable. At the outset of this case Mr. Wood was claiming $372 per hour. He had been licensed just over two years, and it is my opinion that a usual and customary rate for an attorney with his years of experience is in the range of $150 to $250 per hour. Again, however, for the reasons set forth below it is my opinion that Mr. Wood merits a lower hourly rate due to his poor performance and poor legal skills.

Similarly, Mr. Zimmer has been licensed since November, 2015, and it is my opinion that a usual, customary, and reasonable rate for an attorney of his years of experience is in the range of $150 to $250 per hour. Although (for the reasons set forth below) it is my opinion that none of his fees are reasonable or necessary, I do not opine that his rate should be reduced below that range.

In comparison to Mr. Wood and Ms. Chatman, his co-counsel, Amy Clark, purports to charge $400 per hour. Ms. Clark has been licensed to practice law since 2002, and she has substantial consumer litigation experience in both California and Texas. Although (for the reasons set forth below) it is my opinion that none of her

8

fees are reasonable or necessary, it is my opinion that her claimed rate is consistent with the hourly rates charged by attorneys with her experience and years of practice. An hourly rate of $400 per hour for a lawyer with sixteen years of experience demonstrates how unreasonably high the claimed rates of Wood, Chatman, and Zimmer are.

**F. The Amounts Involved and the Results Obtained**

It is my opinion that this is the most significant of the *Johnson* factors, and when applied to this case it is the factor which causes me to opine that Plaintiff should recover no fees, as the actions of his attorneys have harmed him.

As noted above, at the time this case was supposedly settled for $6,500, Plaintiff's attorneys allegedly had (at their inflated rates) $1,309.60 in time in the case. Their costs at that time were less than $600, and had Chatman not caused the settlement to fail Ozmun would have been entitled to over $4,500 after payment of his fees and costs. Instead, facing Defendant's motion for leave to tender $1,000 into the registry of the Court, Ozmun agreed to dismiss his claims in exchange for $1,250, a sum that is 27.8% of what Defendants were originally willing to pay. Put differently, the conduct of Chatman and Wood (as her supervisor) in refusing to agree to a general release, caused Ozmun ultimately to lose a settlement that was 3.6 times the amount that he ultimately received.

This is a terrible result for Ozmun. Meanwhile, as has been acknowledged on the record and as is set forth in ECF Doc. 101-3, another of Plaintiff's attorneys in this case, Tyler Hickle, failed even to attempt to undeem the deemed admissions in the underlying state court cases and failed to file oppositions to the summary judgment motions in those cases, resulting in final summary judgment in favor of PRA in each case. Although the original settlement that Chatman caused to fail included debt forgiveness, the final resolution does not. Thus, as a result of the conduct of his attorneys, Ozmun went from a resolution that would have netted him $4,500 plus debt forgiveness to one that nets him $1,250 and leaves in place the judgments against him.

In my opinion, based upon my experience and qualifications, these are not merely poor results. Rather, these are results that have harmed Ozmun and cost him substantial benefit, all as a result of the unethical conduct of Chatman and Wood as detailed above. Ozmun is substantially worse off today than he was on August 31, 2016, when Chatman caused the settlement to fail. None of his attorneys have put him in a better position than he was in on August 31, 2016, and the outcome that they have achieved has put him in a significantly worse position. It is my opinion that these are terrible results warranting a complete denial of fees for the work of Plaintiff's counsel.

9

### G. The Time Limitations Imposed by the Client or by the Circumstances

I am unaware of any facts that would make this a significant factor.

### H. The Nature and Length of the Professional Relationship with the Client

In his deposition Ozmun testified:

```
                        8
13      Q.   All right.  How long have you known your
14   attorneys?
15      A.   About six months.
16      Q.   How did you meet them?
17      A.   I think when PRA sued me, I think
18   Mr. Hickle offered his assistance.
19      Q.   So he contacted you?
20      A.   I believe so, yes, sir.
21      Q.   Was that by mail?
22      A.   I don't recall.
23      Q.   And how about Ms. Chatman and Mr. Wood,
24   how did they become your lawyers?
25      A.   I don't know that.  I've not met them.
                        9
 1      Q.   Have you ever visited Community Lawyers
 2   Group, ever been to their offices?
 3      A.   I don't think so, no, sir.
```

Ozmun Dep. at 8:13 to 9:3. There is nothing in Ozmun's relationship with his attorneys that, in my opinion, warrants an enhanced fee, or any fee at all.

### I. The Experience, Reputation, or Ability of the Attorney

This factor, too, weighs heavily against Plaintiff and his attorneys. Attorneys Wood and Chatman have filed many suits, but I see little evidence of real experience. In this case, Ms. Chatman has not appeared at a single hearing. Mr. Wood has appeared, but he has not participated, other than to state his appearance on the record. Neither has demonstrated the slightest legal skill or acumen in this case.

I have had multiple cases with attorneys Wood and Chatman as counsel for the plaintiffs. Neither has ever defended a deposition of one of their clients or taken the deposition of one of my clients in any of the cases. On multiple occasions they have had an attorney who is of counsel to their firm appear at the last minute to defend or take depositions. I have twice had hearings with Ms. Chatman, and on both occasions, she was ill-prepared and performed badly, leading to an order for sanctions in the *Plewa* case referenced below. In my opinion, based upon my experience and qualifications set forth above, I have seen no evidence that Wood

and Chatman possess the slightest ability as attorneys.

That opinion is supported by the performance of Plaintiff's attorneys in this case. Throughout the entire case, encompassing three sets of Rule 26(a)(1) disclosures, they wholly failed to disclose a computation of any damages at all directed at RSIEH. Had this case proceeded to trial it was my intention to request a directed verdict upon the empanelment of the jury, based upon the complete failure to disclose any monetary claim against my client. It is my opinion, based upon my experience and expertise, that such failure shows a substantial lack of legal ability and competence.

The general incompetence of Plaintiff's counsel is further evidenced by the fact that they had no sponsoring witness for the credit reports upon which the claims against PRA were based. They failed to take a single oral deposition, failed to do any depositions on written questions, and failed to designate a witness who could attest to and authenticate the credit reports. Such failures are indicative of a complete failure to grasp concepts such as hearsay, authentication, and burden of proof. It is my opinion, based upon my experience and expertise, that such failure shows a substantial lack of legal ability and competence.

As evidenced by ECF Doc. 101-3, one of the defenses of RSIEH for which the Court had found there to be a triable issue of contested fact was RSIEH's submission in the underlying state court case of a proposed default judgment that credited Ozmun's $57 payment. Ozmun has essentially denied such submission, but he designated no witness who could have rebutted the testimony of Steve Javandoost. He did not depose a county court clerk, he did not designate any employee of the clerk's office as a witness, and he produced no certified copy of the county court file. Again, such failures are indicative of a complete failure to grasp concepts such as hearsay and authentication. It is my opinion, based upon my experience and expertise, that such failure shows a substantial lack of legal ability and competence.

I am also familiar with Wood and Chatman's reputation in the legal community. That reputation is for being marginal attorneys who: (a) file "cookie—cutter" suits asserting substantially similar claims for many plaintiffs; (b) assist their clients in, or participate directly in, the manufacturing of FDCPA claims; (c) do not comply with court orders or deadlines; and (d) make excessive and unreasonable demands, using the threat of defense costs and fee-shifting statutes to extort from defendants settlements that are excessive in light of the facts and posture of their cases.

I have personally witnessed this last practice. Based upon my experience and expertise it is my opinion that the demand for $6,500 to settle a case with no actual damages claims, at the pre-answer stage, was grossly excessive and unreasonable. I have received similar, grossly excessive demands from Ms. Chatman in other cases. Wood and Chatman's billing practices are sufficiently questionable that in *Davila v. Midland Funding, LLC*, Case No. 1:17-cv-08874 in the Northern District

11

of Illinois, at ECF Doc. 38 Judge Kim found that Wood had made a misrepresentation to the Court and that "Attorney Wood's time record cannot be considered reliable." I have provided a copy of the *Davila* order as Exhibit C to this declaration, as it also evidences Wood and Chatman's dishonest practices. ("Second, the court finds that the work performed after Defendants made their first offer of judgment was not reasonable in light of the fact that the first offer of judgment was more than adequate to cover Plaintiff's damages.")

As a result of the unethical conduct that led to sanctions in this case I investigated and identified multiple instances in which Ms. Chatman communicated directly with represented parties, sending "dispute" letters directly to those parties without the consent of their counsel. Such conduct was detailed in ECF Doc. 101 and the exhibits thereto. This pattern of unethical and dishonest dealings is also a negative mark on the reputation of Chatman and Wood.

My opinions as to the poor reputation of attorneys Wood and Chatman are further supported by the multiple sanctions orders that they have accumulated in the relatively short time that hey have practiced. In addition to the sanctions awarded against them in this case in ECF Doc. 91, they are the subject of sanctions orders in:

- *Tejero v. Portfolio Recovery Assocs.*, Case No. 1:16-cv-00767-SS in the Western District of Texas, ECF Doc. 52 in that case);
- *Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, No. 17 CV 773, 2018 U.S. Dist. LEXIS 136910 (N.D. Ill. Aug. 14, 2018)
- *Plewa v. LVNV Funding, LLC*, Case No. 1:17-cv-06676 in the Northern District of Illinois
- *Carmen Aguirre v. Northland Group, Inc.*; Case No.: 1:16-cv-05003 in the Northern District of Illinois (ECF Doc. 48 in that case)

Copies of the various sanctions rulings against Wood, Chatman, and their firm accompany this declaration as Exhibit B. Including this case, Wood and Chatman have been sanctioned at least five times in the short period that they have been practicing, each time for a substantial sum. At least three of those sanctions call into question their honesty or ethics. These sanctions orders support my opinion that they practice at a low level, with a poor reputation as attorneys, and that they are not deserving of rates higher than $150 per hour.

During the preceding half-year, attorneys Clark and Zimm have been attorneys of record, and throughout te case attorney Hickle has been an attorney of record. While I do not opine that they have reputations for dishonesty or lack of candor or ethics, they do share fault for the shortcomings in Plaintiff's disclosures and the failure to designate and depose necessary witnesses. Their work has not been substantially better than that of Wood and Chatman, and it is my opinion that (in the context of this case) their rates should be reduced to $150 per hour.

### J. Whether the Fee Is Fixed or Contingent

Plaintiff's motion indicates that the fees in this case are contingent on the success of the case. Texas Disciplinary Rule of Professional Conduct 1.04(d) provides:

> (d) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph(e) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined. If there is to be a differentiation in the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, the percentage for each shall be stated. The agreement shall state the litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement describing the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.

Notwithstanding the absolute requirement that a contingent fee agreement "be in writing," in his deposition Plaintiff testified:

```
                          8
13      Q.   All right.  How long have you known your
14   attorneys?
15      A.   About six months.
16      Q.   How did you meet them?
17      A.   I think when PRA sued me, I think
18   Mr. Hickle offered his assistance.
19      Q.   So he contacted you?
20      A.   I believe so, yes, sir.
21      Q.   Was that by mail?
22      A.   I don't recall.
23      Q.   And how about Ms. Chatman and Mr. Wood,
24   how did they become your lawyers?
25      A.   I don't know that.  I've not met them.
                          9
 1      Q.   Have you ever visited Community Lawyers
 2   Group, ever been to their offices?
 3      A.   I don't think so, no, sir.
 4      Q.   So the only lawyer you've ever met
 5   with -- on this case is Mr. Hickle?
 6      A.   As far as I know, yes, sir.
 7      Q.   How many times have you met with him?
 8      A.   Three or four, maybe.
 9      Q.   And do you have a fee arrangement with
```

```
10  Mr. Hickle?
11     A.   I'm sorry?
12     Q.   Do you have a fee agreement with
13  Mr. Hickle?
14     A.   We haven't discussed that.
15     Q.   How about with Community Lawyers Group,
16  do you have a fee agreement with them?
17     A.   I haven't had any contact with them.
```

Ozmun Dep. Pages 8:13 to 9:17 (ECF Doc. 101-2).

Ozmun has never recanted or corrected that testimony. His attorneys have offered no evidence to contradict his testimony, but if they did they would demonstrate serious ethical lapses by failing to correct the record before now and by impeaching their own client.

It is my opinion that an unlawful, unethical fee agreement that is entered into in violation of Rule of Professional Conduct 1.04 justifies an award of no fees. In the absence of a written fee agreement it is my opinion that none of the fees claimed by Plaintiff's attorneys are reasonable, necessary, usual, or customary.

Moreover, if a fee agreement was made in writing then it is my opinion that the conduct of Plaintiff in giving such testimony, and of his counsel in both permitting and then failing to correct such testimony should bar Plaintiff from any fee recovery in this case.

**Conclusion**

For the foregoing reasons it is my opinion that Plaintiff's attorneys have inflicted harm, not benefit on their client, and that their fees should be reduced to zero.

If the Court is inclined to award any fees to Plaintiff then it is my opinion that such fees should be cut off as of August 31, 2016, as that is the date on which Ms. Chatman unreasonably and unethically refused to agree to a general release. All of the time and expenses incurred since then were unreasonable and unnecessary, as there was no legitimate basis for Ms. Chatman to walk away from the settlement that she had negotiated, and certainly not without involving her client in the process.

Finally, if the Court awards fees to any of Plaintiff's attorneys it is my opinion that their rates should not exceed $150.00 per hour.

The foregoing opinions are based upon my almost thirty-five years of practice as a consumer protection attorney and the experience and qualifications set forth in my prior declaration.

I declare under penalty of perjury that the foregoing matters are, within my personal knowledge, true and correct.

Signed this 4th day of September, 2018.

_____
Manuel H. Newburger, Affiant