UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAROLYN MILLER, | ) |
| Plaintiff, | ) No. 18 CV 4088 |
| v. | ) Judge Rebecca R. Pallmeyer |
| SOUTHWEST CREDIT SYSTEMS, L.P., | ) |
| Defendant . | ) |

## MEMORANDUM ORDER AND OPINION

In March 2018, Plaintiff Carolyn Miller received a letter from Defendant debt collector, Southwest Credit Systems, L.P. ("SWC"), seeking to collect a $125.03 debt. In a section of the document titled "Account Summary," the letter identified the creditor as "MONI." Ms. Miller alleges that "[t]here is no such entity as Moni," and that by listing MONI as the creditor, SWC failed to properly identify the creditor to whom Ms. Miller owed the debt, thus violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* (Compl. [1] at ¶ 21.) Both parties move for summary judgment. Because the letter is not plainly confusing, and Miller has offered no evidence other than her own assertions to support her claim, the court grants summary judgment for Defendant SWC.

## BACKGROUND

Defendant SWC is a debt collection agency based in Texas, licensed and doing business in Illinois. (Pl.'s Statement of Material Facts in Supp. of Mot. for Summ. J. ("Pl.'s SOF") [53] ¶¶ 2–5; Am. Answer [13] at 3.) Plaintiff Carolyn Miller, née Carolyn Webber, is an Illinois resident who owes an unpaid balance on an account for a home security service provided by Platinum Protection, L.L.C. ("Platinum"). (Pl.'s SOF ¶¶ 1, 11.) Miller's contract with Platinum, signed in July 2011, included a provision allowing Platinum to "assign or subcontract all or any of [the] [a]greement without notice to [the] [c]ustomer" to Monitronics Funding, L.P. or to Monitronics

1

International, Inc. (*Id.* at ¶ 6; Platinum Contract ¶ 18, Ex. G to Pl.'s SOF [53-7].) At some time during the course of the contract, Platinum assigned the agreement to Monitronics International, Inc. ("Monitronics"). (*See* Pl.'s SOF ¶ 9.) In October 2014, Miller cancelled her security services with "Platinum Protection or Monitronics" in writing. (Cancellation Letter, Ex. D to Pl.'s SOF [53-4].)

During September and October of 2016, Monitronics underwent a corporate rebranding and changed its name to MONI. (Pl.'s SOF ¶ 10; Def.'s Statement of Material Facts in Supp. of Mot. for Summ. J. ("Def.'s SOF") [40] ¶ 9; Hazzard Aff. ¶ 6, Ex. A to Def.'s Mot. for Summ. J. ("Def.'s MSJ").) On November 30, 2017, MONI placed Miller's unpaid home security account with SWC for collection. (Hazzard Aff. ¶ 5.) Then, on March 29, 2018, SWC sent Miller a letter informing her that her "account ha[d] been assigned to this office for collection," and that she had a balance due of $125.03. (Collection Letter, Ex. E to Pl.'s SOF [53-5]; Ex. B to Def.'s MSJ [40-3].) In the top right-hand corner of the collection letter, there is a table in a box titled "Account Summary," summarizing information about the debt. (*Id.*) This table lists MONI under the heading "Creditor" and includes Miller's customer number with MONI[1] under the heading "Creditor Account No." (*Id.*; Pl.'s SOF ¶ 14.) The Account Summary table also contains Miller's account reference number with SWC,[2] the principal amount of the debt, and the total amount due. (Collection Letter.) The body of the letter assures Miller that SWC would provide verification of the debt, if she disputed it, as well as the "name and address of the original creditor, if different from the current

---

[1] Platinum used two identification numbers in connection with Plaintiff's home security account—an account number and a customer number. From the record, it appears that these numbers remained the same when Platinum assigned Plaintiff's contract to Monitronics. Only the account number is referenced in Plaintiff's July 2011 contract with Platinum, but Plaintiff included both the account number and the customer number in the October 2014 letter canceling her service with Monitronics. (*See* Platinum Contract; Cancellation Letter.) The debt collection letter uses the customer number that Platinum had assigned to Miller's account.

[2] Miller's account reference number with SWC appears to have been used only internally by SWC in connection with its debt collection efforts, not to tie the debt collection letter to Plaintiff's Platinum contract. (*See* Account History, Ex. C to Def.'s MSJ [40-4].)

2

creditor" upon request. (*Id.*) The letter contains no information explaining Monitronics' rebranding as MONI, and no other details about MONI. (*Id.*)

Miller never made any payments on the debt, and there is no indication that Miller contacted SWC for additional information about the debt or the named creditor. She filed this lawsuit through counsel on June 12, 2018. Miller alleges that SWC's collection letter violates § 1692g of the FDCPA by failing to identify "the name of the creditor to whom the debt is owed." 15 U.S.C. § 1692g(a)(2). SWC and Miller both now move for summary judgment.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 322–23 (1986). "An issue of material fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*, 794 F.3d 971, 974 (7th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). On cross-motions for summary judgment, the court "draw[s] inferences 'in favor of the party against whom the motion under consideration was made.'" *Bentrud*, 794 F.3d at 874 (quoting *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 500 (7th Cir. 2008)).

## **DISCUSSION**

### I. Application of the FDCPA to this Dispute

The FDCPA establishes certain requirements with which debt collectors must comply when writing and sending collection letters, also known as dunning letters, to consumers. *See* 15 U.S.C. § 1692g. For the FDCPA's requirements regarding the contents of dunning letters to apply, the party sending the letter must be a debt collector, the debtor must be a consumer, and the unpaid obligation that is the subject of the dunning letter must be a "debt" as that term is defined by the FDCPA. As a threshold matter, SWC challenges whether the FDCPA governs its activity in this case. The parties agree that SWC is a debt collector and that Miller is a consumer

3

as defined by the FDCPA, see 15 U.S.C. § 1692a(3), (6), but SWC contests whether Miller has proven that the alleged debt at issue is a "debt" within the meaning of § 1692a(5). The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction" in which "the subject of the transaction [is] primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). In her Rule 56.1 Statement of Undisputed Facts [53] accompanying her motion for summary judgment, Miller states that the security monitoring service that led to the unpaid balance with MONI was used in her home and "not for business purposes." (Pl.'s SOF ¶ 8.) Rather than file the required response to Plaintiff's Statement of Fact, see Local Rule 56.1(b)(3), SWC filed a general response to Miller's motion for summary judgment. In that response, SWC concedes that "a contract for a home security system at her former residence" is "indicative of the debt being consumer in nature," but nevertheless contends that Miller has not met her burden of proving that she did not accrue the debt on behalf of a business. (Def.'s Resp. to Pl.'s Mot. for Summ. J. ("Def.'s Resp.") [62] ¶¶ 22–23.)

The court finds Miller's submission sufficient on this score. Local Rule 56.1 provides that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." N.D. Ill. L.R. 56.1(b)(3)(C); see Stevo v. Frasor, 662 F.3d 880, 887 (7th Cir. 2011) ("[D]istrict judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."). By failing to properly dispute Plaintiff's statement of material facts in compliance with Local Rule 56.1(b), SWC, as the opposing party, is deemed to have admitted those facts. Accordingly, although in the end it is not dispositive, the court accepts that Miller's unpaid home security service account is a consumer debt, and that the FDCPA governs this dispute.

## II.     FDCPA § 1692g

To comply with the FDCPA, a debt collector must include certain information in either "the initial communication with a consumer in connection with the collection of any debt," or in a notice sent within five days of the initial communication. 15 U.S.C. § 1692g(a). In particular, the debt

4

collector must clearly state the amount of the debt the consumer owes and the name of the creditor to whom the debt is owed. 15 U.S.C. § 1692g(a)(1)–(2). The debt collector must also provide the debtor with written notice that he or she may request information about the original creditor, if different from the current creditor, and that the consumer may dispute the validity of the debt. 15 U.S.C. § 1692g(a)(4)–(5). Moreover, the debt collector must inform the consumer that if she does not dispute the debt's validity, the debt collector will assume it is valid. 15 U.S.C. § 1692g(a)(3).

In this circuit, courts determining whether a dunning letter complies with the requirements of the FDCPA view the communication through "the objective lens of an unsophisticated consumer, who, while 'uninformed, naïve, or trusting,' possesses at least 'reasonable intelligence, and is capable of making basic logical deductions and inferences.'" *Smith v. Simm Assoc., Inc.*, 926 F.3d 377, 380 (7th Cir. 2019) (quoting *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2009)). Whether the plaintiff herself was actually confused by the letter is "unimportant" because "the unsophisticated consumer test is an objective one."[3] *Lox v. CDA, Ltd.*, 689 F.3d 818, 826 (7th Cir. 2012) (quoting *Williams v. OSI Educ. Servs., Inc.*, 505 F.3d 675, 677–78 (7th Cir. 2007)). Instead, courts ask "whether someone of modest education and limited commercial savvy would likely be" confused by the letter. *O'Boyle v. Real Time Resolutions*, 910 F.3d 338, 344 (7th Cir. 2018); *see also Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 415 (7th Cir. 2005) ("'[A] mere claim of confusion is not enough: a plaintiff must show that the

---

[3] In light of this objective standard and the fact that Plaintiff Miller seeks only statutory damages, (*see* Compl. [1] ¶ 37), the court need not rule on Defendant SWC's Motion to Substitute Corrected Affidavit [56]. In that Motion, Defendant SWC moves to substitute a corrected exhibit included as an attachment to Jeff Hazzard's affidavit in Defendant's Motion for Summary Judgment [40]. Plaintiff Miller opposes this motion. (*See* Pl.'s Resp. to Def.'s Mot. to Substitute Corrected Aff. [61].) The corrected exhibit shows that Miller's lawyers communicated with Defendant by letter before filing the lawsuit to explain that she was unable to pay the debt; the letter says nothing about any confusion on her part regarding the identity of the creditor. Because Miller need not show she was actually confused by SWC's communications, however, the corrected exhibit is unnecessary to the court's resolution of the cross-motions for summary judgment.

challenged language of the letters unacceptably increases the level of confusion.") (internal citation omitted).

For claims brought under § 1692e of the FDCPA, alleging that a debt collector used false, deceptive, or misleading statements in connection with the collection of a debt, the Seventh Circuit categorizes statements in three ways. *See Ruth v. Triumph P'ships.*, 577 F.3d 790, 800 (7th Cir. 2009). In the first category are "statements that plainly, on their face, are not misleading or deceptive," and for which the court requires no "extrinsic evidence to determine whether consumers were confused." *Id.* Instead, the court "grant[s] dismissal or summary judgment in favor of the defendant based on [its] own determination that the statement complied with the law." *Id.* The second category of statements consists of those "statements that are not plainly misleading or deceptive but might possibly mislead or deceive the unsophisticated consumer." *Id.* To prevail, the plaintiff must "produc[e] extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive." *Id.* The third category of statements are "clearly misleading on their face." *Id.* at 801. In these cases, the court "grant[s] summary judgment for the plaintiffs without requiring them to prove what is already clear." *Id.*

While the three categories of statements described in *Ruth* may "not formally apply to § 1692g claims," the analysis is similar. *Wood v. Allied Interstate, LLC*, No. 17-CV-4921, 2018 WL 6830333, at *4 (N.D. Ill. Dec. 28, 2018); *see also Lemke v. Escallate, LLC*, 374 F. Supp. 3d 727, 733 (N.D. Ill. 2019). To comply with § 1692g(a), "the debt collector's notice must state the required information 'clearly enough that the recipient is likely to understand it.'" *Janetos v. Fulton Friedman & Gullace, L.L.P.*, 825 F.3d 317, 321 (7th Cir. 2016) (quoting *Chuway v. Nat'l Action Fin. Servs., Inc.*, 362 F.3d 944, 948 (7th Cir. 2004)). The unsophisticated consumer is "protected against confusion [in] whatever form it takes," including "contradiction," "overshadowing," and "the failure to explain an apparent though not actual contradiction." *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997). Accordingly, if a debt collector fails, "directly or indirectly," to include

6

disclosures required by § 1692g(a), such as the name of the current creditor, the plaintiff may prevail on summary judgment without providing extrinsic evidence of confusion. *Janetos*, 825 F.3d at 323; *see also Chuway*, 362 F.3d at 948 ("If it is apparent just from reading the letter that it is unclear, . . . and the plaintiff testifies credibly that she was indeed confused and that . . . she is representative of the type of people who received that or a similar letter, no further evidence is necessary to [survive a defendant's motion for summary judgment].") (internal citations omitted). To prevent dismissal when the letter is not facially confusing, the plaintiff must provide "evidence beyond the letter" and her "own self-serving assertions that the letter is confusing," such as "a carefully designed and conducted consumer survey" or "an appropriate expert witness." *Durkin*, 406 F.3d at 415; *Chuway*, 362 F.3d at 948.

### A. Plaintiff Miller's Motion for Summary Judgment

Miller claims that SWC violated § 1692g(a)(2), which requires a debt collector to "send the consumer a written notice containing . . . the name of the creditor to whom the debt is owed." Specifically, Miller asserts that SWC did not "effectively state the name of the creditor to whom the debt was owed" because "[t]here is no such entity named MONI registered with the State of Illinois to do business with Illinois consumers" and SWC "did not include any information in the Letter sent to Plaintiff that Monitronics had been rebranded as MONI." (Pl.'s Mem. of Law in Supp. of Her Mot. for Summ. J. ("Pl.'s MOL") [52] at 1–2.) As a result, Miller alleges that she was confused about who she needed to pay. (*Id.* at 2.) Essentially, Plaintiff Miller contends that a third-party debt collector fails to clearly identify the creditor to whom the debt is owed when the entity named as creditor does business under a different name than it used at the time the consumer incurred the debt.

In Miller's view, the dunning letter sent by SWC is confusing on its face, akin to *Ruth* category three, because the letter called the creditor MONI rather than Monitronics International, Inc. SWC, in contrast, insists that the letter falls into *Ruth* category one because it clearly identifies the creditor as MONI. At the time SWC sent the debt collection letter, Miller was

7

unaware that Monitronics had rebranded as MONI. Neither party now disputes, however, that Monitronics publicly rebranded as MONI in 2016 and was still operating under the name MONI when SWC sent the debt collection letter to Miller in 2018. While Plaintiff disputes that listing "MONI" as the creditor was clear enough to satisfy § 1692g, the record shows that the names MONI and Monitronics refer to the same entity. (Pl.'s SOF ¶ 10; Def.'s SOF ¶ 9.)

By clearly identifying the creditor, the debt collector ensures that the debtor knows to whom her payment should be addressed and limits the "potential for fraud" by "unscrupulous sender[s]." *Janetos*, 825 F.3d at 324–25. The dunning letter must identify the current creditor clearly enough that "a consumer wishing to verify that a payment would extinguish her obligation could [ ] contact the current creditor to confirm that paying the letter-writer would be the proper course of action." *Id.* Beyond this, the FDCPA does not require debt collectors to identify the creditor in any specific manner or using any specific terminology. *See Smith*, 926 F.3d at 380.

Moreover, a debt collection letter is not plainly confusing in violation of FDCPA § 1692g simply because the debt collector does not identify the creditor by its full business name or legal name of incorporation. *See id.* (citing *Leonard v. Zwicker & Assocs., P.C.*, 713 F. App'x 879, 883 (11th Cir. 2017) ("[N]o bright-light rule requires a debt collector to always identify the creditor by its full business name in order to avoid liability under § 1692g. Rather, . . . a debt collector may use the creditor's full business name, the name under which the creditor usually transacts business, or a commonly used acronym.")). Courts within this circuit have found that collection letters referring to creditors by shortened names or variations on their legal names are not plainly false or confusing. *See, e.g., Stricklin v. First Nat. Collection Bureau, Inc.*, No. 3:10-CV-01027-JPG-SCW, 2012 WL 1076679, at *6 (S.D. Ill. Mar. 30, 2012) (rejecting the plaintiff's argument that it was plainly misleading under § 1692e to refer to the original creditor as "Sprint Services" rather than "Sprint Nextel Corporation"); *Bode v. Encore Receivable Mgmt., Inc.*, No. 05-CV-1013, 2007 WL 2493898, at *5 (E.D. Wis. Aug. 30, 2007) (concluding that identifying the creditor as "Capitol One Services, Inc." rather than "Capital One Bank" was not plainly false or confusing in

violation of § 1692e or § 1692g(a)(2)); *see also Eul v. Transworld Sys.*, No. 15-CV-7755, 2017 WL 1178537, at *30–31 (N.D. Ill. Mar. 30, 2017) (finding at the motion to dismiss stage that a failure to identify a creditor by its full legal entity name was not false or misleading as a matter of law). Monitronics was publicly doing business under the name MONI. Accordingly, it is not obvious that using the name MONI in the dunning letter to identify the creditor to whom Miller owed her debt would confuse the unsophisticated consumer.

In reliance on *Osideko v. L J Ross Assocs., Inc.*, Miller insists that she is entitled to summary judgment because any unsophisticated consumer would be confused by SWC's failure to identify the creditor as Monitronics, the name MONI previously used in transactions with customers, and by SWC's failure to clarify MONI's relationship with Miller. No. 18-CV-3147, 2019 WL 1915666 (N.D. Ill. Apr. 30, 2019). Miller's reliance on *Osideko*, however, is unavailing. In *Osideko*, the debt collector identified the creditor as "Wec (2134) (PEOPLE'S GAS & COKE COMPANY)." *Id.* at *2. The creditor's full legal name was Wec Energy Group, Wec was the creditor's "commonly used acronym or shortened name," and People's Gas & Coke Company was the name the creditor usually used in transactions with customers. *Id.* In these circumstances, the district court had no trouble concluding that the defendant debt collector was entitled to judgment on the pleadings o the debtor's § 1692g(a)(2) claim. The defendant's victory in that case hardly supports a ruling in favor of Miller here; contrary to what Miller implies, *Osideko* does not impose a requirement that a debt collector use the name of the creditor that the debtor "would be more likely to recognize" such as "the one under which [the creditor] usually transacts with [the debtor]," nor the creditor's legal name. *Id.* Rather, the court explained that referring to a creditor in a letter by both an acronym and its popular name "should not count against [the debt collector]." *Id.* The Seventh Circuit in *Smith*, affirming summary judgment in favor of a debt collector, reached a similar conclusion. There, the letter identified Comenity Capital Bank as the "Original Creditor" but also provided the name of the "Client," which was PayPal Credit. *Smith*, 926 F.3d at 380. The court stated that the letter helpfully provided "a whole picture of the debt for

the consumer" by identifying the creditor's full name and its commercial name that the consumer would recognize, but notably did not require a debt collector to do so. *Id.* at 381.

While additional information about a creditor, such as other names by which it is known, may help dispel a debtor's confusion about the nature of a debt, nothing in § 1692g or the Seventh Circuit's case law requires identifying the creditor in a certain way. *See Smith*, 926 F.3d at 381. Indeed, by identifying the creditor by multiple names, SWC could have "mudd[ied] the waters" in a way that would be more confusing to an unsophisticated consumer. *Osideko*, 2019 WL 1915666, at *2; *see, e.g.*, *Braatz v. Leading Edge Recovery Sols., LLC*, No. 11-CV-3835, 2011 WL 9528479, at *1 (N.D. Ill. Oct. 20, 2011) (identifying the creditor as both LVNV and CITIBANK); *Walls v. United Collection Bureau, Inc.*, No. 11-CV-6026, 2012 WL 1755751, at *1 (N.D. Ill. May 16, 2012) (identifying Resurgent as the "Client" and LVNV as the "Current Owner").

Defendant SWC stresses that, like the debt collector in *Osideko*, it included Miller's customer number with Monitronics under the heading "Creditor Account No." to provide additional context about the debt. In *Osideko*, the court found that a similar letter that listed "a single account number" and referred to "a single entity" as the creditor, complied with § 1692g. 2019 WL 1915666, at *3. Courts in other circuits, as well, have observed that including the debtor's account number with the creditor can reduce the unsophisticated consumer's confusion. *See Eger v. Sw. Credit Sys., L.P.*, 17-CV-0819 (SJF)(AYS), 2019 WL 1574802, at *5 (E.D.N.Y. Apr. 11, 2019) ("[E]ven the least sophisticated consumer is assumed to know how to verify his or her account by cross-referencing it to the account number provided."); *Taylor v. MRS BPO, L.L.C.*, 17-CS-01733 (ARR)(RER), 2017 WL 2861785, at *3 (E.D.N.Y. July 5, 2017) ("Even an unsophisticated consumer could match the last four digits of the account number to her former credit card and recognize that the "CLIENT ACCT#" referred to her account with [the creditor].") Including the account number may not eliminate all possibility of confusion, but SWC's straightforward use of "Creditor" to identify MONI, coupled with Plaintiff's corresponding account number, certainly

improves the letter's clarity by permitting Miller to cross-check the account number with her own records.

Miller cites one other district court decision to support her contention that SWC's collection letter was plainly confusing due to its failure to explain Monitronics' name change in the body of the collection letter. *See Dickenson v. Townside T.V. & Appliance, Inc.*, 770 F. Supp. 1122 (S.D. W. Va. 1990). *Dickenson* was addressing a different question, however: whether the FDCPA applies to a creditor collecting its own debts instead of hiring an independent debt collector. A creditor is bound by the FDCPA's provisions directed at debt collectors when it uses "any name other than its own" to collect a debt.[4] *Id.* at 1128. The *Dickenson* court explained that "a creditor may use any established name under which it is known, to collect its debts from a particular debtor as long [as] it has consistently dealt with such debtor since the beginning of the credit relationship at issue under such name." *Id.* If, however, "a creditor undergoes a permissible name change during the course of a credit relationship," the creditor should "inform[ ] the debtor at issue of its name change" to avoid falling "within the realm of the FDCPA." *Id.* at 1128 n.7. This rule addresses a concern that creditors using different names to collect debts than they normally use in transactions with customers are less constrained by a "desire to protect their good will," and so, like independent debt collectors, might engage in harassing or abusive debt collection practices. *Id.* at 1129–30. In the case before this court, Plaintiff has not alleged that MONI used a different name from the one it uses in customer transactions in order to deceive customers or to avoid scrutiny for abusive debt collection practices. Nor could there be: MONI was not acting as a debt collector, so its name change is not governed by the FDCPA. Moreover, the debt collector with whom Miller has dealt has consistently gone by the name Southwest Credit

---

[4] The FDCPA does not apply to creditors seeking to collect debts in their own names. Rather, the FDCPA applies only to debt collectors, defined as those who collect the debts of another, or a creditor who "uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6); *see also Ruth*, 577 F.3d at 796.

Solutions. Accordingly, even if *Dickenson* were binding authority, it would not require SWC to explain Monitronics' rebranding in the debt collection letter.

Finally, Miller cites *Lox v. CDA, Ltd.* in support of her contention that consumers have no obligation to seek clarification if they are confused by the language in a dunning letter. *See Lox*, 689 F.3d at 826 (citing *Gonzalez v. Arrow Fin. Servs., L.L.C.*, 660 F.3d 1055, 1062 (9th Cir. 2011)). It is correct that a dunning letter "must state the required information clearly enough that the recipient is likely to understand it." *Janetos*, 825 F.3d at 321 (internal quotation omitted). But "[i]t is impossible to draft a letter that is certain to be understood by every person who reads it." *Chuway*, 362 F.3d at 948. And debt collectors have no obligation under the FDCPA to detail the debtors' account history in the initial 1692g written notice to preempt all potential sources of confusion. Instead, § 1692g only requires debt collectors to provide this type of clarification following a request for information or a notice of dispute from the consumer. *See* 15 U.S.C. § 1692g(a)(4) (describing the process to verify a debt following a consumer dispute); 15 U.S.C. § 1692g(a)(5) (requiring debt collectors to provide the name and address of the original creditor on request). The debt collection letter SWC sent to Miller in 2018 clearly identifies a single entity, MONI, as the creditor to whom Miller's debt was owed. The court therefore finds that the collection letter was not confusing on its face.

**B.     Defendant SWC's Motion for Summary Judgment**

Plaintiff Miller has not shown that the collection letter sent by Defendant SWC is plainly confusing, but the court recognizes she can argue that SWC's letter could be confusing to an unsophisticated consumer unfamiliar with Monitronics' rebranding to MONI. *See, e.g., Stricklin*, 2012 WL 1076679, at *7; *Bode*, 2007 WL 2493898, at *5; *see also Schneider v. TSYS Total Debt Mgmt., Inc.*, No. 06-C-345, 2006 WL 1982499, at *3 (N.D. Ill. July 13, 2006) (finding, at the motion to dismiss stage, that a dunning letter identifying the creditor as "Target" could be confusing because there are several businesses with the word "Target" in their names). Miller claims that she was personally confused about the creditor's identity because she did not know about

Monitronics' name change. But to survive SWC's motion for summary judgment, Miller needed to provide the court with evidence beyond her subjective confusion, such as consumer surveys or expert witnesses, to show that SWC's letter "unacceptably increases the level of confusion" for "a significant fraction of the population." *Durkin*, 406 F.3d at 415, 419. Miller has provided no such extrinsic evidence.

Miller partly bases her confusion about the creditor's identity on her inability to find a business entity called MONI registered with the State of Illinois after searching the Illinois Secretary of State's registry.[5] (Pl.'s SOF ¶ 16.) This is insufficient to create a genuine issue of material fact for trial for three reasons. First, a missing entry in the Illinois Secretary of State's Business Search is not enough to deny that a business entity exists. Second, that Miller was confused by the Illinois Secretary of State Business Search results does not necessitate a finding that identifying the creditor as MONI, the name Monitronics was using at the time, would "unacceptably increase[ ] the level of confusion" for the unsophisticated consumer. *Stricklin v. First Nat. Collection Bureau, Inc.*, No. 3:10-CV-01027-JPG-SCW, 2012 WL 1076679, at *7 (S.D. Ill. Mar. 30, 2012) ("[Plaintiff] bases [her] confusion [ ] on looking up [the creditor] on the Illinois Secretary of State website business search. The Court does not find this claim credible as it does not believe an unsophisticated consumer, who is uninformed, naïve, or trusting, would use the Illinois Secretary of State website in the first place.") (internal citation omitted). As discussed

---

[5] Because the parties do not dispute that MONI is the new name for Monitronics International, Inc. after its corporate rebrand, the court need not address the parties' conflicting Google search results for the term "MONI." (Def.'s Resp. to Pl.'s Mot. for Summ. J. ("Def.'s Resp.") [62] ¶ 13; Pl.'s Reply to Def.'s Resp. [62] at 3–4.) Plaintiff asserts that an unsophisticated consumer seeking clarification about the identity of a creditor referred to as "MONI" would not discover "that MONI and Monitronics are the same" by conducting a Google search using the terms "Illinois" and "MONI." (Pl.'s MOL, at 9.) Defendant, in contrast, contends that the top Google search result for the term "MONI" is an article describing how Monitronics rebranded as MONI in 2016. (Def.'s Resp. at 6.) The results of a Google search are not enough to make a dunning letter confusing. The FDCPA requires debt collectors to disclose the name of the creditor, and MONI is the name of the creditor. If a consumer believes she has never done business with the entity listed as the creditor in a dunning letter, the FDCPA provides an avenue to verify the validity of the disputed debt. *See* 15 U.S.C. § 1692g(a)(4).

above, the FDCPA does not require debt collectors to identify creditors by their full legal names, and in many situations, a name other than a businesss' legal one may be more recognizable to consumers. Third, and most importantly, a business entity search on the Secretary of State website is not the type of reliable extrinsic evidence of consumer confusion, like "a carefully designed and conducted consumer survey" or "an appropriate expert witness," that the Seventh Circuit has required to create a genuine issue of material fact for trial. *Durkin*, 406 F.3d at 415.

The question for purposes of the FDCPA is not whether Miller was actually confused by SWC's letter, but whether an unsophisticated consumer receiving a debt collection letter identifying a single business entity as the creditor would be confused about who she needed to pay. Miller's claimed subjective confusion stemming from her unique account history with Platinum and Monitronics does not make SWC's identification of MONI as the creditor inaccurate or unclear to the unsophisticated consumer. *Cf. Harrer v. RJM Acquisitions, LLC*, No. 10-CV-7922, 2012 WL 162281, at *4 (N.D. Ill. Jan. 9, 2012) ("The unsophisticated consumer knows his account history.") (citing *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 646 (7th Cir. 2009)). Because Miller has not provided extrinsic evidence to suggest otherwise, she has not met her burden of proof to avoid summary judgment. *See Chuway*, 362 F.3d at 948. Defendant SWC's motion for summary judgment is granted.

## **CONCLUSION**

The collection notice that SWC sent Ms. Miller in 2018 is not confusing on its face. It could potentially be confusing to the unsophisticated consumer, but Miller's failure to produce any extrinsic evidence of consumer confusion defeats her FDCPA claim. Plaintiff Miller's motion for summary judgment [51] is denied, and Defendant SWC's motion for summary judgment [40] is granted. Motion for class certification [34] and motion to strike [44] are stricken as moot.

ENTER:

Date: October 16, 2019

_____
REBECCA R. PALLMEYER
United States District Judge